# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CAROLYN SAMUELS-BOSWELL,

    Plaintiff,

v.

ANDREW M. SAUL,
**Commissioner of the Social Security Administration,** [1]

    Defendant.

Case No. CIV-18-321-SPS

## OPINION AND ORDER

The claimant Carolyn Samuels-Boswell requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty-seven years old at the time of the administrative hearing (Tr. 36, 259, 266). She completed seventh grade and has worked as a housekeeping cleaner and cook helper (Tr. 45, 69). The claimant alleges that she has been unable to work since January 1, 2014, due to heart problems, restless leg syndrome ("RLS"), chronic obstructive pulmonary disease ("COPD"), blindness in her left eye, and a learning disability (Tr. 259, 266, 310).

**Procedural History**

In February 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 259-72). Her applications were denied. ALJ Deirdre O. Dexter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 25, 2017 (Tr. 15-28). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.,* she could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk up to four hours in an eight-hour workday, sit up to six hours in an eight-hour workday, occasionally climb ramps or stairs, but could never climb ladders, ropes, or scaffolds (Tr. 20). As to environmental limitations, the ALJ found the claimant should not be exposed to unprotected heights and dangerous moving mechanical parts, should avoid concentrated exposure to extreme heat or extreme cold, and should avoid even moderate exposure to humidity, dusts, odors, fumes, and pulmonary irritants (Tr. 20). Due to psychologically-based factors, the ALJ found the claimant could perform simple, routine, and repetitive work instructions with regular breaks every two hours, could occasionally interact with supervisors as needed to receive work instructions, could work in proximity to co-workers but should have no more than occasional direct work interactions with them, and could never interact with the general public (Tr. 20). Due to impaired peripheral vision in the claimant's left eye, the ALJ found the claimant could not perform jobs where items approached her from the left (Tr. 20, 25). The ALJ further found the job should not involve more than ordinary and routine changes to the work setting or work duties, and should not require reading, writing, or math above a third-grade level (Tr. 20). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform, *e. g.,* charger II (Tr. 27-28).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly evaluate whether her mental impairments met the requirements of Appendix 1, Part 404, Subpart P ("the Listings"); and (ii) properly identify a job she could perform, existing in significant numbers, given the limitations in her RFC. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of borderline intellectual functioning, depression, anxiety disorder, COPD, loss of central visual acuity, obesity, and RLS, but that her mild thoracic spondylosis and hepatitis C were non-severe (Tr. 17-18). The relevant medical records reveal the claimant's primary care providers began treating her for depression in January 2014 (Tr. 454-55). Jarvis Thompson, a licensed professional counselor at CREOKS, established an initial mental health treatment plan on July 2, 2015, which included diagnoses of dysthymic disorder, generalized anxiety disorder, and uncomplicated bereavement (Tr. 585).

On April 24, 2015, Kathleen Ward, Ph.D. conducted a consultative mental status examination of the claimant (Tr. 516-21). Dr. Ward observed that the claimant was sometimes "childlike," seemed to take little to no responsibility for events and became tearful when discussing her father's death (Tr. 518). She indicated that the claimant's social demeanor was consistent with someone who may have intellectual impairments (Tr. 518). Dr. Ward administered the Montreal Cognitive Assessment ("MOCA"), the results of which were consistent with "some cognitive impairment" (Tr. 518). Dr. Ward's

diagnostic impression was mild intellectual disability v. borderline intellectual functioning, amphetamine use disorder by history, and unspecified depressive disorder (Tr. 518).

William Bryant, Ph.D. conducted a consultative mental status examination of the claimant on June 18, 2015 (Tr. 561-62). He administered the Wechsler Adult Intelligence Scale III, which produced a verbal score of 66, a performance score of 77, and a full-scale IQ score of 68 (Tr. 768-69). Dr. Bryant observed the claimant interacted with good confidence, used her fingers on math problems, and could not multiply (Tr. 562). He also observed she could read some, but not all, the words she was presented with and could not sound out any of them (Tr. 562). Dr. Bryant diagnosed the claimant with mild intellectual disability, major depressive disorder (moderate), polysubstance dependence in stable remission, and rule out attention deficit disorder (Tr. 562).

State agency psychologist Jason Gunter, Ph.D. reviewed the record in October 2015 and November 2015 and found the claimant was moderately limited in her ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting; and was markedly limited in her ability to understand, remember, and carry out detailed instructions, and interact appropriately with the general public (Tr. 120-22, 154-57). He determined that the claimant could perform simple tasks of 1-2 steps with routine supervision, interact appropriately with co-workers and supervisors for incidental work purposes but should avoid contact with the public, and could adapt to a work setting and some forewarned changes in a usually stable work setting (Tr. 122, 173).

The claimant first asserts that the ALJ erred in her analysis of the Listings at step three. In her written opinion at step three, the ALJ concluded that the claimant's mental impairments did not meet or medically equal a Listing (Tr. 16-18). In reaching her conclusion, the ALJ made findings regarding the "Paragraph B" criteria related to the claimant's mental impairments. She determined that the claimant had moderate limitations in the functional areas of: (i) understanding, remembering, or applying information; (ii) interacting with others; (iii) concentrating, persisting, or maintaining pace; and (iv) adapting oneself (Tr. 18-19).

Although the claimant bears the burden of proof at step three to establish that she meets or equals the requirements for a listed impairment, *see Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require her to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton,* 79 F.3d at 1009 [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why the claimant was not disabled at step three. *Id.*, *citing Cook v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986). However, the ALJ's failure to make specific findings at step three can be harmless error when "the ALJ's confirmed findings at steps four and five of [her] analysis, coupled with indisputable aspects of the medical record, conclusively preclude [c]laimant's qualification under the listings at step three." *Fischer–Ross,* 431 F.3d at 735. A reviewing court may thus "supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), [the

court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733-34.

In this case, the ALJ found that the claimant's mental impairments did not meet or equal any listing at step three, but only specifically considered Listings 12.02 (Neurocognitive Disorders), 12.04 (Depressive, bipolar and related disorders), and 12.11 (Neurodevelopmental disorders) in her written decision (Tr. 16-18).[3] The claimant asserts that she meets Listing 12.05B (Intellectual Disorder) and that the ALJ erred by not expressly considering this listing in her opinion. Listing 12.05B requires the following:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

---

[3] Listings 12.02 and 12.04 contain the following criteria: (i) "paragraph A" medical documentation criteria, (ii) "paragraph B" functional criteria, and (iii) "paragraph C" criteria for serious and persistent mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02, 12.04 (effective August 22, 2017 to March 13, 2018). In order to meet Listings 12.02 or 12.04, a claimant must satisfy the "paragraph A" medical documentation criteria and either the "paragraph B" criteria or the "paragraph C" criteria. *Id.* The "paragraph B" criteria requires proof that the claimant has an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* The "paragraph C" criteria requires that the claimant has a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence of both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of her mental disorder; and (2) marginal adjustment, that is, a minimal capacity to adapt to changes in her environment or to demands that are not already a part of her daily life. *Id.* Listing 12.11 contains only the "paragraph A" medical documentation criteria and the "paragraph B" functional criteria, both of which must be satisfied. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.11 (effective August 22, 2017 to March 13, 2018).

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    a. Understand, remember, or apply information (see 12.00E1); or

    b. Interact with others (see 12.00E2); or

    c. Concentrate, persist, or maintain pace (see 12.00E3); or

    d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B (effective August 21, 2017 to March 13, 2018). As an initial matter, the claimant correctly asserts that her full-scale IQ score of 68 meets the first prong of Listing 12.05B. The claimant also asserts that she meets the third prong of Listing 12.05B because she was in special education classes, had poor grades, worked below grade level in school, and took her driving test four times, contentions that the Commissioner does not address. The Court will thus assume *arguendo* that the claimant meets the third prong, leaving only the second prong at issue in this case.

In support of her position that she has significant deficits in adaptive functioning and meets the second prong of Listing 12.05B, the claimant suggests that she has at least a marked, if not extreme, limitation in her ability to adapt or manage oneself because, *inter alia,* Dr. Bryant indicated she was unable to manage her own benefits, Dr. Ward described her as "childlike" and unwilling to take responsibility for events, and Dr. Gunter found she could not adapt well. The claimant also suggests that she is markedly limited in her ability to interact with others because, *inter alia,* Dr. Ward observed that her social demeanor was

consistent with someone who may have intellectual impairments, Dr. Bryant noted she had some anti-social attitudes, and Dr. Gunter found that she was socially limited and unable to deal with the public. Similarly, the claimant asserts that she is markedly limited in her ability "concentrate, persist, or maintain pace" due to, *inter alia,* her low MOCA score. In other words, the claimant asks the Court to reweigh the evidence in the record, which the Court cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). In forming the RFC at step four, the ALJ discussed Dr. Ward's consultative examination, the claimant's MOCA score, Dr. Bryant's consultative examination, the claimant's IQ scores, Dr. Gunter's reviewing opinion, as well as her borderline intellectual functioning, which she noted did not prevent the claimant from working in the past (Tr. 22-26). These findings provide substantial evidence for the ALJ's determination that the claimant's mental impairments did not meet or equal any listing, including Listing 12.05B. *See Fischer-Ross*, 431 F.3d at 734 (No "remand for a more thorough discussion of the listings" is required "when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review."). In any event, the adaptive functioning requirements found in Listing 12.05B(2) are identical to the paragraph B criteria for Listings 12.02, 12.04, and 12.11, which the ALJ did address and the claimant does not otherwise challenge. When the ALJ's paragraph B analysis is applied to Listing 12.05B, the claimant does not meet the significant deficits in adaptive functioning requirement and is therefore precluded from qualifying under this listing at step three. Thus, "any

deficiency in the ALJ's articulation of h[er] reasoning to support h[er] step three determination is harmless." *Fischer-Ross,* 431 F.3d at 735.

The claimant's remaining arguments relate to the ALJ's findings at step five. At the administrative hearing, the ALJ elicited testimony from a vocational expert ("VE") that the claimant's past relevant work included housekeeping cleaner (DICOT § 323.687-014) and cook helper (DICOT § 317.687-010) (Tr. 69-70). As relevant to this appeal, the ALJ posited to the VE an individual with the age, education, and work history of the claimant who could perform work with the limitations adopted as the RFC set forth above (Tr. 72-73). The VE testified that such person could not perform the claimant's past work but could perform the job of charger II (DICOT § 700.687-026), a sedentary, unskilled job with 19,000 jobs in the national economy (Tr. 71, 74). The VE explained that a charger II "[H]elps set up a bench hand, brings items. [T]hey may do some . . . light cleaning, brushing. It's obviously small objects such as silver, jewelry, things of that sort." (Tr. 76). Based on this testimony, the ALJ concluded that the claimant could perform the job of charger II and that 19,000 jobs was a significant number of jobs in the national economy (Tr. 28).

The claimant first contends that there is no affirmative evidence in the record demonstrating her ability to perform mathematics or write at the levels necessary to perform the charger II job. The Math Development Level ("MDL") for the charger II job is one, which includes the following skills: "Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch,

foot, and yard; and ounce and pound." DICOT, App. C, Sec. III (4th ed., revised 1991), 1991 WL 688702. An MDL of one is the lowest level. *Id*. Similarly, the charger II job has a Language Development Level ("LDL") of one, which includes the following writing skills: "Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses." *Id.* An LDL of one is also the lowest level. *Id.* Notably, the claimant's past relevant work as a housekeeping cleaner and cook helper also have an MDL and LDL of one. DICOT §§ 323.687-014, 317.687- 010. Furthermore, the RFC and hypothetical question posed to the VE limited the claimant to reading, writing, and math at a third-grade level although she had successfully completed seventh grade.

The claimant nevertheless contends that she is unable to perform math or write at the levels indicated for the charger II job, pointing to Dr. Bryant's observations that she used her fingers on math problems and could not multiply, her MOCA score, and her own statement that she could not count change. However, as discussed above, the ALJ thoroughly summarized the relevant evidence in the record, including Dr. Bryant's assessment, the claimant's MOCA score, and the claimant's hearing testimony, and her opinion clearly indicates that she adequately considered the medical evidence of record in reaching her conclusions regarding the claimant's RFC. Furthermore, the only suggested limitations in the medical record were those stated by the state reviewing physicians and psychologists, which the ALJ adopted, *added more restrictive limitations* of her own, *and still concluded* that the claimant could perform a reduced range of light work. Most importantly, though, the claimant disregards that she has the burden to provide evidence of her functional limitations. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004).

The Commissioner's burden at step five is to prove that there are jobs in the economy the claimant can perform given the limitations proven at steps one through four, *see Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), it is not "to provide medical evidence in support of an RFC assessment, unless the ALJ's duty to further develop the record is triggered." *See Howard*, 379 F.3d at 948 [citation omitted].

Finally, the claimant contends that the ALJ did not "give consideration to the factors that should direct an ALJ's resolution of the significant number inquiry," *Norris v. Barnhart,* 197 Fed. Appx. 771, 777 (10th Cir. 2006) *citing Trimiar v. Sullivan,* 966 F.2d 1326, 1330 (10th Cir. 1992), when she concluded that 19,000 charger II jobs amounted to a significant number of jobs in the national economy. Courts have declined to set a rule establishing what constitutes a significant number of jobs for purposes of the Act. *See, e. g., Trimiar,* 966 F.2d at 1330. Instead, the ALJ should determine numerical significance based on an individualized evaluation of the facts of each case and, most importantly, her own common sense. *Allen v. Barnhart,* 357 F.3d 1140, 1144 (10th Cir. 2004) *citing Trimiar,* 966 F.2d at 1330. Factors the ALJ should consider in this analysis include: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Trimiar,* 966 F.2d at 1330 (internal citations omitted). However, when the number of jobs available in the national economy is "much larger" than the 650 to 900 regional jobs at issue in *Trimiar,* a multi-factor analysis is not necessary. *Raymond v. Astrue,* 356 Fed. Appx. 173, 178 n.2 (10th Cir.

2009) ("*Trimiar* does not hold that . . . a court must engage in a factoral analysis when the number of jobs [nationally] available is, as here (1.34 million), much larger.").

The claimant does not contend that 19,000 jobs is an insignificant number of jobs in the national economy; rather, she contends that the ALJ erred by failing to conduct a significant number inquiry using the factors set forth above. The claimant relies on *Stokes v. Astrue*, 274 F. Appx. 675 (10th Cir. 2008), and *Norris v. Barnhart*, 197 Fed. Appx. at 777, which she claims stand for the proposition that a remand for a specific multi-factor analysis is appropriate when the number of available jobs in the national economy is less than 152,000 or 190,000, respectively. However, the standard of review in both of those cases was the more rigorous harmless error standard because the ALJ erred with respect to one of the identified jobs and therefore never analyzed whether the number of remaining jobs was significant in the first instance. *Stokes,* 274 F. Appx. at 684; *Norris,* 197 Fed. Appx. at 777. Harmless error applies if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart,* 357 F.3d at 1145. In this case, because the ALJ found 19,000 jobs to be a significant number, the Court's role is to review that number using the substantial evidence standard set forth above *Id.* at 1143-44 (explaining the difference between reviewing an ALJ's factual finding of significance and supplying a dispositive finding for an ALJ). Here, the Court is persuaded that the ALJ's finding that 19,000 jobs in the national economy constitutes a significant number is supported by substantial evidence. *See Trimiar,* 966 F.2d at 1332 (noting that courts need not "strain at numbers" when deciding whether an ALJ's findings concerning what constitutes a significant number of jobs if the

ALJ's decision is otherwise supported by substantial evidence). *See also Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015) ("The *Rogers* [*v. Astrue*, 312 Fed. Appx. 138, 142 (10th Cir. 2009)] decision came out the same year as *Raymond*, and that court implicitly found, as a matter of law, without engaging in a multi-factor analysis, that 11,000 jobs in the national economy is significant. The Court is persuaded by *Rogers* and finds that 32,000 utility tractor jobs in the national economy is also significant."). Furthermore, the ALJ's determination is consistent with courts in this circuit as well as persuasive authority from other circuits suggesting that fewer than 19,000 jobs can constitute a significant number of jobs in the national economy. *See, e. g., Rogers*, 312 F. Appx. at 142 (finding the ALJ could rely on 11,000 jobs nationally as substantial evidence to support her finding of non-disability); *Jones v. Colvin,* 2015 WL 5573074, at *3 (E.D. Okla. Sept. 22, 2015) (finding 15,520 jobs in the national economy significant); *Holmes v. Saul,* 2019 WL 3290492, at *6 (D.N.M July 22, 2019) (finding 11,700 jobs in the national economy significant). As such, the ALJ's findings at step five of the sequential evaluation are supported by substantial evidence.

The Court finds that when all the evidence is taken into account, the conclusion that the claimant could perform light work with the aforementioned limitations is thus well supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949.

## Conclusion

In summary, the Court finds that correct legal standards were applied, and that the decision of the Commissioner is supported by substantial evidence. The Commissioner's decision is therefore hereby AFFIRMED.

**DATED** this 8th day of April, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**